UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Planned Parenthood of Northern
New England, Concord Feminist
Health Center, Feminist Health
Center of Portsmouth, and
Wayne Goldner, M.D.</u>

    v.                     Civil No. 03-cv-491-JD

<u>Kelly Ayotte, Attorney General</u>

O R D E R

The plaintiffs brought a class action under 42 U.S.C. §
1983, seeking a declaration that New Hampshire's Parental
Notification Prior to Abortion Act was unconstitutional and an
injunction to bar enforcement of the Act.  After the Act was
repealed and the suit was dismissed as moot, the plaintiffs moved
for an award of attorneys' fees and costs pursuant to 42 U.S.C. §
1988.  The State of New Hampshire objects to the motion,
contending that the plaintiffs are not prevailing parties and,
therefore, are not entitled to fees and costs.[1]

The parties filed an assented-to motion for a briefing
schedule to address the question of an award of attorneys' fees.

---

[1]Because Peter Heed, who was replaced by Kelly Ayotte, was
sued in his official capacity as Attorney General of the State of
New Hampshire, the state is treated as the defendant.  <u>See</u>
<u>Negron-Almeda v. Santiago</u>, 528 F.3d 15, 21 n.2 (1st Cir. 2008).

The court granted the motion, which limited the parties' initial filings to the issue of whether the plaintiffs are entitled to fees.  If the court concludes that the plaintiffs are entitled to fees, the parties then will address the amount of fees.

<u>Standard of Review</u>

Section 1988 provides an exception to the rule that litigants generally pay their own attorneys' fees.  <u>Sole v. Wyner</u>, 127 S. Ct 2188, 2191 (2007).  Under that exception, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  "The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner in which Congress sought to promote in the fee statute."  <u>Id.</u> at 2194 (internal quotation marks omitted).

"A party is a prevailing party when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  <u>Rossello—Gonzalez v. Acevedo—Vila</u>, 483 F.3d 1, 5 (1st Cir. 2007).  Therefore, a party who initially achieves a preliminary injunction but later loses on the merits of the challenge is not a prevailing party for purposes of § 1988(b).  <u>Sole</u>, 127 S. Ct. at 2196.  On the other

2

hand, parties who receive only nominal damages or partial success are prevailing parties if they succeeded on any significant issue and achieved at least some of the benefit that they sought in the litigation.  Farrar v. Hobby, 506 U.S. 103, 109 (1992). Nevertheless, "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim [and] . . . must obtain an enforceable judgment against the defendant from whom fees are sought . . . or comparable relief through a consent decree or settlement."  Id. at 111.

## Background

The New Hampshire legislature enacted the Parental Notification Prior to Abortion Act, RSA 132:24 – 132:28, in 2003, with an effective date of December 31, 2003.  "The Act prohibit[ed] physicians from performing an abortion on a pregnant minor (or a woman for whom a guardian or conservator has been appointed) until 48 hours after written notice of the pending abortion is delivered to her parent or guardian."  Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 323 (2006). Planned Parenthood of Northern New England, Concord Feminist Health Center, Feminist Health Center of Portsmouth, and Wayne Goldner, M.D. ("the Plaintiffs"), filed suit on November 17, 2003, challenging the constitutionality of the Act and seeking

injunctive and declaratory relief under § 1983.

The Plaintiffs alleged that the Act was unconstitutional because it lacked an "exception to its notice and delay requirements for circumstances in which delay will threaten the health of the young woman." Compl. ¶ 2. The Plaintiffs also alleged that the death exception, RSA 132:26, I(a), was too narrow and that the confidentiality provision for the judicial bypass procedure, RSA 132:26, II(b), was inadequate to meet constitutional requirements. The Plaintiffs sought expedited review and a preliminary injunction against enforcement of the Act, beginning on its effective date.

The State objected, arguing that because the Plaintiffs brought a facial challenge to the Act's constitutionality the heightened standard of review used in United States v. Salerno, 481 U.S. 739 (1981), applied to the Plaintiffs' claims, and that the Act was not unconstitutional. Specifically, the State contended that the lack of a health exception was not unconstitutional because other New Hampshire laws permitted physicians to perform emergency medical care, despite a lack of consent, without civil liability in certain circumstances. Alternatively, the State argued that the judicial bypass provision in the Act adequately protected the health of a pregnant minor. The State also argued that the death exception

4

and confidentiality provision were constitutionally adequate.
The State further asked that if any parts of the Act were found
to be unconstitutional, those parts should be severed, pursuant
to the Act's severability clause, from the constitutional
portions.

On November 18, 2003, the court held a telephone conference
with counsel to set a briefing schedule and to consider other
procedural matters.  The court asked whether the Plaintiffs would
agree to consolidate their motion for a preliminary injunction
with the merits of the case.  Later, in the absence of a
response, the court concluded that the Plaintiffs agreed to
consolidation and considered the case on the merits.

To determine whether or not the Act was facially
unconstitutional, the court reviewed the different standards used
to decide that issue and concluded that the Salerno standard did
not apply when, as in this case, the challenged legislation
restricted access to an abortion, a constitutionally protected
action.  Planned Parenthood of N. New England v. Heed, 296 F.
Supp. 59, 63 (D.N.H. 2003).  Instead, the appropriate standard
was whether the challenged law imposed an "undue burden" or a
"substantial obstacle" to a woman's choice to undergo an
abortion.  Id.  The court concluded that the Act was
unconstitutional because it lacked a health exception and because

5

the death exception and confidentiality provision were inadequate.  Id. at 66–67.  The court also ruled that the severability clause did not apply because the lack of a health exception made the Act unconstitutional and no excision of unconstitutional parts would remedy its deficiencies.  Id. at 67.

The court granted the Plaintiffs' request for a declaratory judgment, as follows:  "For the foregoing reasons, the Act, to be codified at RSA 132:24 through RSA 132:28, is declared to be unconstitutional."  Id. at 68.  The court also granted a permanent injunction:

> The Attorney General of the State of New Hampshire, and those acting pursuant to and under his direction and authority, are hereby enjoined from enforcing the Parental Notification Prior to Abortion Act, 2003 N.H. Laws ch. 173, to be codified at RSA 132:24–28, on its effective date or at any time thereafter.

Id.  Judgment was entered on December 29, 2003.  The State appealed.

On appeal, the State argued that the Salerno standard applied, that parental notification laws were not required to have health exceptions, and that the death exception and the confidentiality provision were adequate.  The First Circuit disagreed with the State on all issues, holding that the "undue burden" standard rather than the Salerno standard applied, that a health exception was constitutionally required, that the death

exception was "drawn too narrowly," and that the confidentiality
provision was inadequate.  Planned Parenthood of N. New England
v. Heed, 390 F.3d 53, 59–65 (1st Cir. 2004).  The court affirmed
the declaratory judgment and the injunction entered by this
court.

The State filed a petition for a writ of certiorari to the
United States Supreme Court.  In the petition, the State
identified two issues for review: (1) whether the First Circuit
applied the correct standard for reviewing a facial challenge to
the constitutionality of a statute regulating abortion, and (2)
whether the Act sufficiently protects the health and life of a
pregnant minor.  On May 23, 2005, the Supreme Court granted the
State's petition for a writ of certiorari.

At oral argument before the Supreme Court, however, the
State raised a new theory, asserting that the declaratory
judgment and injunction were overly broad.  The State argued that
the need for a health exception might arise only in rare
circumstances and that if that were to occur, the Act would not
be enforced against a doctor providing such emergency services
based on a "competing harms" defense.  The State also argued that
a more appropriate challenge to the Act would be a suit by a
physician who could present actual rare circumstances when
enforcement of the Act would be unconstitutional, which would

allow a narrow restriction of the Act in particular applications.

In its decision, the Supreme Court did not address either of the issues raised by the State in its petition for a writ of certiorari.  Instead, the Court stated that it would "not revisit our abortion precedents today, but rather address a question of remedy:  If enforcing a statute that regulates access to abortion would be unconstitutional in medical emergencies, what is the appropriate judicial response?"  Ayotte, 546 U.S. at 323.  The court found that three propositions pertinent to the case were established: (1)"States unquestionably have the right to require parental involvement when a minor considers terminating her pregnancy . . . ."  id. at 326; (2) "a State may not restrict access to abortions that are necessary in appropriate medical judgment for the preservation of the life or health of the mother," id. at 327 (internal quotation marks omitted); and (3) "[i]n some very small percentage of cases, pregnant minors, like adult women, need immediate abortions to avert serious and often irreversible damage to their health," id. at 328.

The Court agreed with the lower courts that the Act would be unconstitutional in certain circumstances but disagreed that the Act necessarily should be invalidated in total.  Id. at 330–31. Instead, the Court directed, "[s]o long as they are faithful to

legislative intent, then, in this case the lower courts can issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application." Id. at 331.  The court further held:  "Either an injunction prohibiting unconstitutional applications or a holding that consistency with legislative intent requires invalidating the statute in toto should obviate any concern about the Act's life exception.  . . .  Finally, if the Act does survive in part on remand, the Court of Appeals [the First Circuit] should address respondents' separate objection to the judicial bypass' [sic] confidentiality provision." Id. at 332.

The Court did not review the lower courts' alternative holdings that the Act was unconstitutional because it lacked an adequate death exception and failed to adequately protect the confidentiality of the judicial bypass procedure.  The decision indicates, however, that the death exception also would be subject to either a revised injunction, barring unconstitutional applications, or the existing injunction.  Without considering the effect of the alternative bases for the declaratory judgment and the injunction, the Court vacated the judgment of the First Circuit and remanded the case for further proceedings.

On March 22, 2006, the First Circuit remanded the case to this court for further proceedings.  The parties agreed that the

permanent injunction entered by this court on December 29, 2003, would remain in place for the remainder of the litigation, and the First Circuit ordered that the injunction remain in effect. Planned Parenthood, No. 04–1161 (March 22, 2006) (dkt. no. 27).

On remand, the Plaintiffs were granted leave to file an amended complaint to address certain matters pertaining to the Act's judicial bypass provision.  The State filed a partial motion for summary judgment on legislative intent, and the Plaintiffs filed a cross motion for summary judgment.  The State responded to the Plaintiffs' motion with its own cross motion for summary judgment.

On February 1, 2007, the court entered a procedural order temporarily staying the case while a bill to repeal the Act was pending in the New Hampshire legislature.  After the legislature repealed the Act, effective June 29, 2007, the State moved to dismiss the case as moot.  The Plaintiffs did not dispute that the statutory issue was moot but asked that the case remain open to consider their motion for an award of attorneys' fees and costs.  The court granted the motion to dismiss to the extent that the issues in the case, other than whether the Plaintiffs would be entitled to an award of fees and costs, were moot.  The Plaintiffs filed a motion for an award of fees and costs, and the State has objected.

10

Discussion

The Plaintiffs seek an award of fees and costs as prevailing parties on the grounds that they succeeded in having the Act declared unconstitutional and won a permanent injunction against its enforcement, which would have continued, at least as to the Act's unconstitutional applications, but for repeal of the Act. The State argues that the Plaintiffs are not prevailing parties because they "did not succeed in their facial challenge to the . . . Act and the Supreme Court awarded costs to the Defendant." Def. Mem. at 1.  The State argues that because the Plaintiffs did not achieve judicial relief on remand, they did not prevail.

A.  Prevailing Party

The Plaintiffs contend that they are the prevailing parties in this case because they succeeded in obtaining an injunction that prevented the Act from being enforced.  They assert that although the Supreme Court remanded the case for consideration of a more narrow declaratory judgment and injunction, that decision did not undermine the rulings below that the constitution required the Act to have an exception to protect the health of pregnant minors and that the constitution requires a death exception to restrictions on abortions and protects the confidentiality of minors using the judicial bypass procedure.

They argue that they succeeded on significant issues in the case, including the requirement of a health exception, and that the continuation of the injunction barred the State from enforcing the Act.

B.  Catalyst Theory

The State contends that this case is analogous to Buckhannon Bd. & Home Care, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001).[2]  In Buckhannon, the plaintiff received orders to close its assisted living homes because they were operating in violation of a West Virginia statute that required all residents to be capable of "self preservation" in the event of fire.  Id. at 600.  The plaintiff brought suit to challenge the statute as a violation of the Fair Housing Amendments Act of 1988.  Id. at 601.  The Department agreed not to enforce the orders while the case was pending.  Id. Before the court took any action in the case, however, the West Virginia legislature passed legislation that amended the statute and removed the challenged provision.  Id.  The case was then

_____

[2]Although Buckhannon dealt with the fee-shifting provisions under the Fair Housing Amendments Act and the Americans with Disabilities Act, the definition of "prevailing party" in that case is applicable to other fee-shifting statutes.  Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 165 n.9 (1st Cir. 2007).

dismissed as moot.  Id.

The plaintiff requested attorneys' fees as the prevailing party under the "catalyst theory," meaning that the suit was the catalyst that caused a change in the law.  The Supreme Court rejected the "catalyst theory" and held that a "judicially sanctioned change in the legal relationship of the parties" is necessary to support prevailing party status.  Id. at 604.

Here, unlike the circumstances in Buckhannon, this court granted the Plaintiffs relief on the merits of their claims by issuing a declaratory judgment and a permanent injunction.  The First Circuit affirmed the decision.  The Supreme Court agreed that the constitution prohibits states from restricting access to abortions that are necessary to preserve the life or health of the mother and that some pregnant minors will need immediate abortions to preserve their lives or health.  The Court vacated the lower court judgment and remanded the case to determine whether the New Hampshire legislature intended to have the court issue a more narrow injunction and declaratory judgment that would incorporate provisions into the Act to meet constitutional requirements or intended that the entire Act be invalidated because of its constitutional deficiencies.  The Court did not address the lack of a death exception or the inadequacy of confidentiality.  The Court also did not explain the effect of

13

its decision on the existing injunction.  The parties agreed that
the court-ordered injunction would remain in place for the
remainder of the litigation, and the First Circuit ordered that
result.

Therefore, in this case, before the legislature repealed the
Act, the court granted the Plaintiffs relief on the merits of
their case, and the State was permanently enjoined from enforcing
the Act.  The court-ordered injunction altered the relationship
between the parties by preventing enforcement of the Act.
Although the First Circuit's judgment affirming the declaratory
judgment and permanent injunction was vacated by the Supreme
Court, on remand, the First Circuit continued the injunction in
effect.  As a result, the Plaintiffs' request for fees and costs
is not based on the catalyst theory that was rejected in
Buckhannon, but rather is based on the Plaintiffs' success in
achieving court recognition that the Act did not meet
constitutional requirements and a permanent injunction barring
enforcement of the Act.[3]

_____

[3]The Supreme Court agreed that the constitution required
health and death exceptions in abortion regulation.

C.   <u>Supreme Court's Award of Costs</u>

The State argues that because the Supreme Court awarded it
costs under Supreme Court Rule 43.2 after vacating the First
Circuit's judgment, the Plaintiffs are not prevailing parties.
Rule 43.2 provides that the respondent or appellee shall pay
costs if the Supreme Court reverses or vacates a judgment.
<u>Buckhannon</u>, 532 U.S. at 606 n.8.  The Court's decision to award
costs was a ministerial application of its rule and not a
considered analysis of prevailing party status.  Therefore, the
Court's decision, based on Rule 43.2, does not resolve the
question of whether the Plaintiffs are prevailing parties for
purposes of § 1988.


D.   <u>Final Judgment on the Merits</u>

The State further argues that the "Plaintiffs did not obtain
any of the relief they requested because they did not succeed in
having the Act invalidated in the Supreme Court. . . .  The
Supreme Court agreed with [the State] that the Act was not
unconstitutional, vacated the Court of Appeals' judgment and
remanded for further judicial proceedings, which never occurred."
Def. Mem. at 2.  Based on that interpretation of the proceedings
in this case, the State contends that the Plaintiffs are not
prevailing parties because they did not achieve a final judgment

on the merits after remand.

A plaintiff is not a prevailing party based on achieving preliminary relief that is later reversed by a judgment on the merits.  <u>Sole</u>, 127 S. Ct. at 2196.  In <u>Sole</u>, Wyner, the plaintiff, organized an event to be held at a state park in Florida to form antiwar artwork by arranging nude individuals in a peace symbol.  <u>Id.</u> at 2192.  The state notified Wyner that participants in the peace symbol would have to comply with Florida's "Bathing Suit Rule," which precluded nudity.  <u>Id.</u>

Wyner filed suit in federal court, alleging that her planned artwork was protected by the First Amendment and seeking immediate and permanent injunctive relief.  <u>Id.</u>  The district court granted a preliminary injunction based upon Wyner's proposal that the peace symbol would be shielded from the public by a fabric screen.  <u>Id.</u> at 2193.  When the display took place the next day, however, the participants formed the peace symbol outside of the barrier that had been put in place by the state and then, after the display, went into the water.  <u>Id.</u>

Wyner continued her action in federal court, seeking a permanent injunction against the "Bathing Suit Rule."  <u>Id.</u>  The district court, however, granted the state's motion for summary judgment, concluding that the conduct of the participants in the peace symbol display demonstrated that the Rule was no broader

16

than necessary to protect the public.   Id.   The court
nevertheless awarded Wyner attorneys' fees, as the prevailing
party, for the first part of the litigation in which she won the
preliminary injunction.   Id.

The Supreme Court concluded that Wyner was not a prevailing
party because "her initial victory was ephemeral."   Id. at 2196.
Although she first was allowed to proceed with the peace symbol
display, "[a]t the end of the fray, Florida's Bathing Suit Rule
remained intact, and Wyner had gained no enduring change in the
legal relationship between herself and the state officials she
sued."   Id. (internal quotation marks omitted).   The Court
expressly did not decide "whether, in the absence of a final
decision on the merits of a claim for permanent injunctive
relief, success in gaining a preliminary injunction may sometimes
warrant an award of counsel fees."   Id.

In this case, the Plaintiffs achieved a permanent injunction
and declaratory judgment.   Contrary to the State's interpretation
of the Supreme Court's opinion, the Court agreed that
constitutional requirements preclude a state from restricting
access to abortions that are necessary to preserve the health of
the mother.   Ayotte, 546 U.S. at 327.   The Court also agreed that
in a small percentage of cases pregnant minors would need
abortions to protect their health.   Id. at 328.   The Court then

17

stated:  "After finding an application or portion of a statute
unconstitutional, we must next ask:  Would the legislature have
preferred what is left of its statute to no statute at all?"  <u>Id.</u>
at 330.

The Court vacated the First Circuit's judgment and remanded
the case to have the lower court divine the intent of the New
Hampshire legislature and to fashion a remedy accordingly.  The
First Circuit ordered the injunction to remain in place and
remanded the case to this court for further proceedings.  Before
that process concluded, the New Hampshire legislature repealed
the Act.

Unlike the circumstances in <u>Sole</u>, in this case, the
Plaintiffs won a permanent injunction that remained in place
throughout the litigation.  Neither the injunction nor the
declaratory judgment was reversed by a decision on the merits of
the Plaintiffs' case.  Instead, the Supreme Court directed that
the lower court consider whether a more limited remedy was
available, based upon the underlying conclusion that the Act was
unconstitutional in at least some applications.  A more limited
remedy, however, necessarily would have declared that the Act was
unconstitutional in at least some applications and would have
barred enforcement under those circumstances.

A plaintiff also cannot be a prevailing party based upon a

18

success that is reversed on appeal.  Rossello-Gonzalez, 483 F.3d
at 5.  As is discussed above, although the Supreme Court vacated
the First Circuit's judgment for the purpose of considering a
more limited remedy, the court-ordered injunction remained in
place.  In addition, the Supreme Court's decision, had the
process concluded before the New Hampshire legislature repealed
the Act, at most would have limited the injunction and the
declaratory judgment but would not have eliminated either.
Therefore, unlike the circumstances in Rossello-Gonzalez, the
Plaintiffs' initial victory was not reversed on appeal.

     The State further argues that the Plaintiffs' success was de
minimis at best because the Plaintiffs did not achieve a final
judgment that invalidated the Act.  The State asserts that it did
not dispute that the Act could not be enforced in an
unconstitutional situation.  Although the State may have conceded
that the Act needed a health exception to pass constitutional
muster by the time the case reached the Supreme Court, that issue
was hotly contested in this court and on appeal to the First
Circuit.  The Plaintiffs' victory on that issue was central to
their case.

     The injunction ordered by this court, which the First
Circuit continued in place after the Supreme Court's decision,
prevented the State from enforcing the Act at all.  The State's

19

argument that it agreed not to enforce the Act in
unconstitutional applications does not undermine the broader
effect of the injunction.  Therefore, the court-ordered
injunction altered the legal relationship of the parties and made
the Plaintiffs prevailing parties in this case.  See, e.g.,
Dearmore v. City of Garland, 519 F.3d 517, 525 (5th Cir. 2008).


E.   Whether to Award Fees

     A prevailing party is entitled to fees under § 1988,
"'unless special circumstances would render such an award
unjust.'"  Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336
(1st Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429
(1983)).  The court presumes that a prevailing party is entitled
to an award of fees.  B. Fernandez & HNOS, Inc. v. Kellogg USA,
Inc., 516 F.3d 18, 28 (1st Cir. 2008).  Therefore, the party
opposing an award bears the burden of persuading the court not to
make an award.

     The State argues that any success the Plaintiffs achieved
was too small to warrant an award of fees.  For the reasons
discussed above, the court disagrees.  The Plaintiffs, as
prevailing parties, are entitled to an award of reasonable
attorneys' fees and costs.

Conclusion

For the foregoing reasons, the Plaintiffs' motion for a
ruling that they are prevailing parties (document no. 72) is
granted.

Before the parties address the issue of the amount of a
reasonable award of fees and costs, the court directs counsel to
meet and to use their best efforts to resolve this matter without
further application to the court, which would conserve the
parties' time and resources and the resources of the court.

If the matter cannot be resolved by agreement, the
Plaintiffs shall file a motion for reasonable attorneys' fees and
costs, supported by appropriate billing records, affidavits, and
any other necessary materials, **on or before October 1, 2008**.  The
State shall file its response **within thirty days of the date of
filing of the Plaintiffs' motion.**

SO ORDERED.

                                   /s/ Joseph A. DiClerico, Jr.
                                   Joseph A. DiClerico, Jr.
                                   United States District Judge

August 12, 2008

cc:  Corinne L. Schiff, Esq.
     Dara Klassel, Esq.
     Jennifer Dalven, Esq.
     Martin P. Honigberg, Esq.
     Lawrence A. Vogelman, Esq.
     Laura E. B. Lombardi, Esq.
     Maureen D. Smith, Esq.
     Cathleen M. Mahoney, Esq.
     Erica Bodwell, Esq.